UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID PATILLO,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
_______________________________________ /

No. 13-10668

District Judge Arthur J. Tarnow

Magistrate Judge R. Steven Whalen

**REPORT AND RECOMMENDATION**

Plaintiff David Patillo ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED [Docket #12] and that Plaintiff's Motion for Summary Judgment be DENIED [Docket #8].

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB on February 16, 2010 and SSI on October 26, 2010, alleging

disability as of November 30, 2005 (Tr. 108-109, 110-113). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on July 27, 2011 in Mount Pleasant, Michigan before Administrative Law Judge ("ALJ") JoErin O'Leary (Tr. 27). Plaintiff, represented by attorney Mikel Lupisella, testified, (Tr. 31-49), as did vocational expert ("VE") Michelle Ross (Tr. 50-54). On September 23, 2011, ALJ O'Leary found Plaintiff not disabled (Tr. 22).

On December 19, 2012, the Appeals Council declined to review the administrative decision (Tr. 1-5). Plaintiff filed suit in this Court on February 18, 2013.

## II. BACKGROUND FACTS

Plaintiff, born September 18, 1962, was 49 at the time of the administrative decision (Tr. 22, 108). He completed four years of college (Tr. 151) and worked previously as a dishwasher and a "temp" worker (Tr. 146). He alleges disability due to back and hand problems and substance abuse (Tr. 145).

### A. Plaintiff's Testimony

*Plaintiff's counsel prefaced his client's testimony by stating that Plaintiff alleged disability due to bipolar disorder, an anxiety disorder, depression, chronic pain syndrome due to lumbar disc disease and arthritis of the wrists, hands, and knees* (Tr. 30).

Plaintiff then offered the following testimony:

He currently lived by himself in a house adjacent to his mother's home (Tr. 31). His mother helped him clean, cook, and attend doctors' appointments (Tr. 31). He did not hold

a current driver's license (Tr. 31). His neighbor drove him to the hearing (Tr. 31). While in school, he was placed in special education due to Attention Deficit Hyperactivity Disorder ("ADHD") (Tr. 32). He was able to read with the use of glasses (Tr. 32). He did not write well due to hand swelling (Tr. 32).

After graduating from high school, Plaintiff attended Ferris State for five years but did not obtain a degree (Tr. 33). He last worked in 2010 (Tr. 33). He was unable to work due to the pain medication side effect of drowsiness (Tr. 34). Back and hand pain caused sleep disturbances (Tr. 34). He had been diagnosed with fibromyalgia (Tr. 40). Symptoms of bipolar disorder also created work related impairments (Tr. 34). Up until recently, he saw a therapist twice a month (Tr. 34-35). Since his therapist resigned, he had been awaiting assignment to a new therapist (Tr. 35). He had not seen a medical doctor since being discharged from a mental hospital six months prior to the hearing, but relied on "refill" prescriptions for Seroquel, Depakote, Xanax, Celexa, Buspar, and Vicodin (Tr. 36). He reiterated that his medication made him drowsy, noting that he slept "all day" (Tr. 39). He experienced problems lifting due to a history of lumbar spine problems (Tr. 41-42).

In response to the ALJ's questions regarding narcotics abuse, Plaintiff stated that he had been falsely accused of abusing narcotics after accidently taking one of his daughter's prescription strength pain pills instead of "regular over-the-counter aspirins" (Tr. 42). He admitted to previous cocaine use, but noted that he had not used illicit drugs in over a year (Tr. 43). He stated that his last overdose was triggered by the death of his wife and two other loved ones in a short period (Tr. 43).

Plaintiff's latest hospitalization, lasting four days, occurred three to four weeks before the hearing (Tr. 44). He performed household chores with difficulty and was not able to grocery shop (Tr. 46-47). His activities consisted of attending therapy sessions and Narcotics Anonymous and Alcoholic Anonymous meetings (Tr. 43). In response to questioning by his attorney, Plaintiff stated that he experienced concentrational problems, noting that at the moment, he had "a pile of dishes" in his sink (Tr. 48). He coped with fatigue and pain by reclining with his legs elevated (Tr. 48).

**B. Medical Records**[1]

**1. Treating Records**

December, 2005 treating records state that Plaintiff was currently performing sedentary work at a Dollar Tree store (Tr. 306). March, 2006 treating notes state that he injured his back performing heavy lifting at work (Tr. 304). Treating notes from the following month state that Plaintiff denied depression but took Xanax for occasional anxiety (Tr. 303). Treating records from the following month state that Plaintiff was "sketchy" about the location of his back pain (Tr. 301). He reported taking cough syrup because it relaxed him (Tr. 301). October, 2006 treating notes state that Plaintiff had recently increased his Vicodin use and demonstrated drug seeking behavior (Tr. 299). In November, 2006, Plaintiff sought emergency treatment for back pain, requesting extra strength Vicodin (Tr. 257).

In January, 2007, he sought emergency treatment for a migraine headache (Tr. 253-

[1]Medical records predating the February 16, 2010 alleged onset of disability are discussed for background purposes only.

256). Upon release, he was prescribed extra strength Vicodin (Tr. 255). Treating notes from May, 2007 state that although Plaintiff did not exhibit symptoms of anxiety, he requested Xanax (Tr. 287, 289). The following month, Plaintiff sought emergency treatment, requesting Vicodin (Tr. 379). A drug screen was positive for cocaine (Tr. 380). He was recommended for inpatient psychiatric care (Tr. 383).

An April, 2007 drug screen was positive for cocaine (Tr. 389). July, 2007 treating notes state that Plaintiff received inpatient psychiatric treatment for cocaine, alcohol, and opiate dependence (Tr. 286). He was diagnosed with depression (Tr. 286). The same month, Plaintiff again sought Vicodin for back pain but had not followed up with back exercises or recommendations for physical therapy (Tr. 285).

In January, 2008, Plaintiff reported that he had not abused narcotics or illicit drugs in several months (Tr. 281). A February, 2008 drug screen was positive for Oxycodone use (Tr. 309). Treating notes from the same month state that Plaintiff was sober between July, 2007 and January, 2008 because he was incarcerated (Tr. 277). July, 2008 nerve conduction studies were unremarkable (Tr. 312-313). In August, 2009, Plaintiff, currently incarcerated, received emergency treatment for depression (Tr. 349). He was prescribed Paxil and Vistaril (Tr. 349). In October and November, 2009, Plaintiff reported intermittent anxiety (Tr. 353, 469).

In January, 2010, Plaintiff was admitted to a psychiatric hospital for nine days (Tr. 334-341, 398, 401, 459). He reported that he had recently been released from jail and was currently homeless (Tr. 337, 401). He expressed "vague suicidal and homicidal ideations"

(Tr. 337). He demonstrated full strength in all extremities, a normal gait, and normal ranges of motion (Tr. 340). Upon discharge, he was assigned a GAF of 55[2] (Tr. 335). The following month, psychological intake records state that Plaintiff had fair insight and impulse control (Tr. 364). He admitted substance abuse in the past year (Tr. 364, 366). He was assigned a GAF of 54 with a diagnosis of bipolar disorder (Tr. 367). The following month, Plaintiff sought Vicodin for body pain (Tr. 373).

March, 2010 medical records show that Plaintiff was working as a dishwasher 30 hours a week (Tr. 411, 465). Notes from the same month state that he received a diagnosis of fibromyalgia from the University of Michigan Hospital (Tr. 412). In April, 2010, Plaintiff reported hand and back pain (Tr. 410). June, 2010 medical treating records indicate that he was currently working at an Olive Garden restaurant and as a telemarketer (Tr. 408, 467). A November, 2010 drug screen was positive for Dilaudid (Tr. 491). December, 2010 treating records indicate that Plaintiff continued to hold two jobs (Tr. 468). In January, 2011, Plaintiff voluntarily submitted to a six-day psychiatric inpatient stay (Tr. 502-509). February, 2011 examination notes state that he experienced tendinitis of the wrists but demonstrated a normal gait and a normal mood and affect (Tr. 489).

**2. Non-Treating Records**

---

[2]A GAF score of 51-60 indicates moderate symptoms OR moderate difficulty in social, occupational, or school functioning. *American Psychiatric Association, Diagnostic and Statistical Manual Mental of Mental Disorders* ("*DSM–IV*"), 34. (4th ed.2000).

In June, 2010, Ron Marshall, Ph.D. completed a Psychiatric Review Technique on behalf of the SSA, finding the presence of fibromyalgia, and affective and personality disorders creating mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 441). Dr. Marshall also completed a Mental Residual Functional Capacity Assessment, finding that Plaintiff experienced moderate limitation in understanding, remembering, and carrying out detailed instructions; maintaining concentration for extended periods; working in conjunction with others; completing a work week without psychological based interruptions; and interacting appropriately with the general public (Tr. 445-446).

The following month, Mathew Branch performed a Physical Residual Functional Capacity Assessment, finding that Plaintiff could lift 20 pounds occasionally and 20 frequently; sit, stand, or walk for up to six hours in an eight-hour workday; and push and pull without limitation (Tr. 443). He found that Plaintiff could balance, stoop, kneel, crouch, and climb ramps and stairs frequently and crawl and climb ropes, ladders, and scaffolds occasionally (Tr. 444). Branch found the absence of manipulative, visual, and communicative limitations but determined that Plaintiff should avoid concentrated exposure to hazards (Tr. 444).

**3. Records Submitted After the ALJ's September 23, 2011 Decision[3] (Tr. 517-551)**

---

[3] Where, as here, the Appeals Council denies a claimant's request for a review of an application based on new material (Tr. 1–5), the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Cotton v. Sullivan*, 2 F.3d 692, 696–696 (6th Cir.1993). Sentence six of 42 U.S.C. § 405(g) states that

January, 2010, inpatient psychiatric records, *see above,* detail Plaintiff's nine-day treatment (Tr. 542-551). An August, 2010 psycho-social assessment by Health Deliver, Inc. states that he sought treatment for depression, anger, and mood swings stemming from bipolar disorder (Tr. 518). He reported lower back pain and psychological trauma as a result of past prison stints (Tr. 519). He admitted to the recent use of marijuana and alcohol and the past use of cocaine (Tr. 520). He reported that he had been in "regular" (as opposed to special education) while in school (Tr. 520). He was diagnosed with bipolar disorder with a GAF of "50 to 60"[4] (Tr. 521). A November, 2010 medication review by Brian Powell,

---

the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." (emphasis added). Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of § 405(g).

The new material does not provide grounds for remand. First, Plaintiff does not cite any of the recently submitted material in arguing for remand and has not provided good cause for the late submission of this evidence. Moreover, these records do not provide a basis for reconsideration of the ALJ's decision, even assuming that Plaintiff had provided good cause for the tardy submission. A portion of the Sentence Six material contains copies of records already considered by the ALJ and thus do not constitute "new" evidence.

Other records, while "new," would tend to undermine, rather than support a disability finding. For example, Plaintiff's August, 2010 statement he was placed in a regular (as opposed to special) education program while attending school (Tr. 520) contradicts his testimony that he had been placed in special education (Tr. 32). Medical records created in the five months prior to the administrative hearing state that his affect and mood were consistently unremarkable (Tr. 527-531).

4

A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *DSM–IV* at 34.

D.O. states that Plaintiff was currently taking Seroquel, Depakote, and Xanax (Tr. 534). Dr. Powell noted that Plaintiff appeared "friendly, polite, and pleasant" (Tr. 534).

In January, 2011, Plaintiff voluntarily submitted to a six-day psychiatric inpatient treatment (Tr. 535-541). He indicated that the recent death of three loved ones created anxiety, depression, and sleeplessness (Tr. 538). He reported marijuana use three days prior to admittance (Tr. 540). Plaintiff reported that he had been incarcerated for 10 years for armed robbery and had been jailed more recently for uttering and publishing (Tr. 542). He reported a 20-year history of back and hand pain (Tr. 540). Upon discharge, Plaintiff denied suicidal or homicidal ideation (Tr. 535). He was assigned a GAF of 65[5] (Tr. 536).

February, March, and April, 2011 medication reviews state that Plaintiff's affect and mood were unremarkable (Tr. 528-531). In May, 2011, Dr. Powell refilled prescriptions for Xanax and Buspar, noting that Plaintiff reported good results from Xanax with "some breakthrough episodes of anxiety" (Tr. 527). Dr. Powell noted that Plaintiff was fully oriented with an appropriate affect and "coherent speech" (Tr. 527).

**C. Vocational Testimony**

VE Ross characterized Plaintiff's former work as a dishwasher as unskilled at the medium exertional level[6] (Tr. 50). The ALJ then posed the following question to the VE,

---

5

GAF scores in the range of 61-70 suggest "some mild symptoms or some difficulty in social, occupational, or school functioning." *DSM–IV–TR* at 34.

6

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small

taking into account Plaintiff's age, education, and work experience:

> [W]e'll assume this individual is limited to light exertional work except that in addition this individual would be unable to work around occupational hazards such as dangerous machinery or unprotected heights. They would not be able to climb ladders, ropes or scaffolds. They would not be able to kneel or crawl. They would be limited to frequent as opposed to constant handling and fingering. They would be limited to simple tasks. They would be limited to no more than occasional interaction with the public. I'm going to actually add that in addition they'd be limited to occasional interaction with coworkers and supervisors. They would be limited to low stress work which would be defined as work requiring no more than occasional decision-making, changes in the work setting, or use of independent judgment. With those restrictions, would such an individual be able to perform the past work that you identified? (Tr. 51).

The VE responded that given the hypothetical limitations, the individual would be unable to perform Plaintiff's past relevant work as a dishwasher, but could perform the unskilled, light work of a machine tender (7,800 positions in the State of Michigan); line attendant (4,800); and packager (6,300) (Tr. 52). The VE testified that if the hypothetical individual were limited to sedentary work, he could perform the work of a parts checker (3,500) and machine attendant (4,000) (Tr. 52). The VE stated that if the same individual were unable to work three or more times per month "due to a combination of physical and mental impairments," or were "off-task" 25 percent of the work day, all work would be

---

tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

precluded (Tr. 52-53). The VE stated that the need to alternate sitting and standing when needed would not change the job testimony regarding the exertionally light positions of machine tender and line attendant (Tr. 53).

In response to questioning by Plaintiff's attorney, she stated that the need to recline with feet above waist level at unpredictable intervals, or, the inability to stay on-task for 20 percent of the work day would also preclude all work (Tr. 54). She stated that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 53).

**D. The ALJ's Decision**

Citing the medical and therapy records, ALJ O'Leary found that Plaintiff experienced the severe impairments of "bipolar disorder; anxiety disorder; substance abuse and dependence; and fibromyalgia" but that the conditions did not meet or equal a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15-16). The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following additional restrictions:

> [H]e needed to avoid hazards such as unprotected heights and dangerous moving machinery. He could not climb ladders, ropes, or scaffolds. He could not kneel or crawl. He could frequently (no constantly) handle and finger. He could perform simple tasks. He could occasionally interact with the public, coworkers, and supervisors. He could perform "low stress" work, meaning, that he could only occasionally be required to exertcise judgment and make work related decisions. He could tolerate occasional changes in his work setting (Tr. 17).

Citing the VE's testimony, the ALJ determined that while Plaintiff was unable to

perform his past relevant work, he could work as a machine tender, line attendant, and packager (Tr. 21).

The ALJ discounted Plaintiff's allegations of disability, noting that "no evidence that he was given special accommodations" during his 2009 incarceration, and that therapy records created during the jail stint indicated that he denied physical problems (Tr. 18). She found that "bipolar depression, anxiety, and substance abuse" did not prevent him from performing "simple, low stress type work where he would only occasionally have to interact with others" (Tr. 19). She observed that the medical transcript showed that Plaintiff had engaged in substance abuse since the February 16, 2010 alleged onset of disability date, but that he "functioned well when he was sober and in treatment" (Tr. 19).

## **III. STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services*, 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence

is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

**The Hypothetical Question**

Plaintiff argues that the hypothetical question to the VE did not account for his full degree of impairment. *Plaintiff's Brief* at 7-11, *Docket #8* (citing Tr. 51). He contends that the omission of critical psychological and physical limitations from the hypothetical question invalidates the Step Five finding that he was capable of a significant range of other work.[7] *Id.* at 7 (citing *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994)).

The question of whether the ALJ erred by omitting Plaintiff's professed limitations from the hypothetical question depends in large part on whether her credibility determination was supported by substantial evidence. *See Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118-119 (6th Cir.1994)(ALJ not obliged to include properly discredited allegations of limitation in hypothetical to VE). The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2. The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case

[7]Plaintiff's argument includes citation to case law holding that the opinion of a treating physician is entitled to deference. *Plaintiff's Brief* at 8-9. However, the record does not contain an opinion of disability or limitation by any of the treating sources.

record."*Id.* [8]

Substantial evidence amply supports the ALJ's credibility determination. She noted correctly that Plaintiff's limitations as a result of hand and back pain did not prevent him from working part time long after the alleged onset of disability date (Tr. 18, 408, 467-468). She cited July, 2008 EMG studies showing no evidence of Carpal Tunnel Syndrome and noted that Plaintiff's claims of unsubstantiated body pain were undermined treating source observations that such allegations were consistent with drug seeking behavior (Tr. 18). The ALJ observed that Plaintiff had been "discharged from two clinics for violating his narcotics contract" (Tr. 18). Further, the ALJ did not wholly reject Plaintiff's allegations of physical limitation, noting that the RFC placed limitations on climbing, kneeling, crawling, handling, and fingering, as well as the need to avoid heights and moving machinery due to medication side effects (Tr. 19). As to the alleged psychological limitations, the ALJ found that Plaintiff "functioned well when he was sober and in treatment" (Tr. 19). She noted that his testimony

---

[8]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

as to illicit drug use was not wholly candid (Tr. 19-20). Having explained her reasons for discounting the unsupported allegations of both physical and psychological limitation, the ALJ was not required to include them in the hypothetical question. *See Stanley, supra*, 39 F.3d at 118-119.

My own review of the evidence, discussed above, comports with the ALJ's findings. The transcript strongly supports the conclusion that Plaintiff repeatedly abused both prescription and illicit drugs, yet while sober, was able to hold two jobs and work for 30 hours a week (Tr. 408, 467-468). The record supports the ALJ's conclusion that Plaintiff was capable of "simple, low stress type work where he would only have to occasionally interact with others" (Tr. 19). My own review of the transcript has not revealed other grounds for remand.

The ALJ's determination that Plaintiff was capable of performing a significant range of light work was easily within the "zone of choice" accorded to the fact-finder at the administrative hearing level. As such, it should not be disturbed by this Court. *Mullen v. Bowen, supra*.

## VI. CONCLUSION

I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR

72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 29, 2014

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on January 29, 2014, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager to the
Honorble R. Steven Whalen